## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

SHERMAN G. HOLLEY,

       *Plaintiff,*

    v.

UNITED STATES OF AMERICA,

       *Defendant.*

Civil Action No. 24 - 1536 (LLA)

1

## <u>MEMORANDUM OPINION</u>

Sherman G. Holley, a pretrial detainee proceeding pro se and *in forma pauperis*, brought this suit in the Superior Court of the District of Columbia against the U.S. Marshals Service ("USMS"), alleging that multiple USMS officers assaulted him while conducting a security search and escorting him through the Moultrie Courthouse.  ECF No. 1-1.  The United States substituted itself as the defendant, ECF No. 1 ¶¶ 3-4, removed the action to this court, *id.*, and subsequently moved to dismiss the complaint, ECF No. 12.  For the reasons explained below, the court will grant the United States' motion and dismiss the complaint.

## I.    FACTUAL BACKGROUND

The following factual allegations drawn from Mr. Holley's complaint, ECF No. 1-1, are accepted as true for the purpose of evaluating the motion before the court, *Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1250 (D.C. Cir. 2005).  In May 2023, while Mr. Holley was in the custody of the D.C. Department of Corrections, a team of U.S. Marshals transported him to the

Moultrie Courthouse.  ECF No. 1-1, at 4.[1]  Upon arrival, the Deputy Marshals conducted a security search.  *Id.*  One of the Deputy Marshals "slid[] the side of his hand in between [Mr. Holley's] anals [sic]" in an "act of sexual misconduct."  *Id.*  Mr. Holley further alleges that the Deputy Marshals told him to remove a splint on his right hand that he needed to protect a fracture.  *Id.* at 4, 6.  Mr. Holley refused and "told them that they could call the[] medical [staff] to remove [it]" instead.  *Id.* at 4.  "One of the U.S. Marshal[s] became very upset" and accused Mr. Holley of trying to be "smart."  *Id.*  When escorting Mr. Holley back to the D.C. Department of Corrections, "4 or 5 Marshals" "assault[ed]" him while he "was still in full body and leg[] chains."  *Id.*  Mr. Holley suffered injuries to his lower back and feet.  *Id.* at 5.  He complained to corrections officers, but he was denied medical treatment until later in the week.  *Id.*

## II.    PROCEDURAL HISTORY

In April 2024, Mr. Holley sued the USMS in Superior Court.  ECF No. 1-1; Complaint, *Holley v. U.S. Marshal*, 2024 CAB 2245 (D.C. Super. Ct. Apr. 11, 2024).  Attempting to proceed under 42 U.S.C. §§ 1981 and 1988, he alleges excessive use of force and cruel and unusual punishment in violation of his Fourth, Eighth, and Fourteenth Amendment rights.[2]  *See* ECF No. 1-1,

---

[1] Because there is only one "U.S. Marshal" for the Superior Court, it appears that Mr. Holley is referring to the Deputy U.S. Marshals who carry out prisoner transport; accordingly, the court will refer to them as "Deputy Marshals."

[2] Mr. Holley initially framed his complaint as simply alleging an "assault."  ECF No. 1-1, at 4-5.  In his opposition to the United States' motion to dismiss, Mr. Holley clarified that the bases for his claims were Section 1981, Section 1988, and the Constitution.  ECF No. 16, at 5.  Because this court liberally construes pro se filings, it may "consider[] supplemental material filed by a pro se litigant in order to clarify the precise claims being urged—including facts set forth in a plaintiff's opposition to a motion to dismiss."  *Spence v. U.S. Dep't of Veterans Affs.*, 109 F.4th 531, 538 (D.C. Cir. 2024) (internal quotation marks omitted) (quoting *Greenhill v. Spellings*, 482 F.3d 569, 572 (D.C. Cir. 2007)).

at 4-5, 7-8; ECF No. 16, at 6.  Mr. Holley seeks $300 million in compensatory damages.  ECF No. 1-1, at 10.

In May 2024, the United States filed a certification under the Westfall Act, 28 U.S.C. § 2679, attesting that the "United States Marshal referenced in the Complaint was acting within the scope of his employment as an employee of the United States of America at the time of the alleged incidents."  ECF No. 1-2.  The United States was thus automatically substituted as the named defendant.  *See* 28 U.S.C. § 2679(d)(2); ECF No. 1, at 2.

The United States then removed the case to this court.  28 U.S.C. §§ 1442(a)(1), 1446, 2679(d)(2); ECF No. 1.  In its Notice of Removal, the United States stated that "[t]he U.S. Attorney's Office has not yet been served with process in this matter."  ECF No. 1 ¶ 1.

In August 2024, Mr. Holley requested subpoenas to issue to the Superior Court for footage of the alleged May 2023 incident.  ECF No. 10, at 3; ECF No. 11.  Shortly thereafter, the United States moved to dismiss the complaint for lack of subject-matter jurisdiction and failure to state a claim. ECF No. 12.  It also opposed the subpoena request as premature.  ECF No. 13.  Both matters are now fully briefed.  ECF Nos. 13, 16, 19.

### III.    LEGAL STANDARDS

"Federal courts are courts of limited jurisdiction," and it is generally presumed that "a cause lies outside [of] this limited jurisdiction."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  Under Federal Rule of Civil Procedure 12(b)(1), the court must dismiss an action unless the plaintiff can establish, by a preponderance of the evidence, that the court possesses subject-matter jurisdiction.  *Green v. Stuyvesant*, 505 F. Supp. 2d 176, 178 (D.D.C. 2007).  In reviewing such a motion, the court "is not limited to the allegations set forth in the complaint" and

"may consider materials outside the pleadings." *Morrow v. United States*, 723 F. Supp. 2d 71, 76 (D.D.C. 2010) (quoting *Jerome Stevens Pharms.*, 402 F.3d at 1253).

Under Rule 12(b)(6), the court will dismiss a complaint that does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In evaluating a motion under Rule 12(b)(6), a court accepts all well-pleaded factual allegations in the complaint as true. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also Atherton v. D.C. Off. of the Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009). Although the plausibility standard does not require "detailed factual allegations," it "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor will "'naked assertion[s]' devoid of 'further factual enhancement'" suffice. *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 557).

Pleadings by pro se litigants are generally held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam). This liberal construction "is not, however, a license to ignore the Federal Rules of Civil Procedure." *Sturdza v. United Arab Emirates*, 658 F. Supp. 2d 135, 137 (D.D.C. 2009). Thus, "even a pro se plaintiff must meet his burden of proving subject matter jurisdiction to survive a Rule 12(b)(1) motion to dismiss." *Smith v. Scalia*, 44 F. Supp. 3d 28, 36 (D.D.C. 2014). Likewise, "the complaint must still 'present a claim on which the Court can grant relief'" in order to defeat a motion to dismiss under Rule 12(b)(6). *Id.* (quoting *Budik v. Dartmouth-Hitchcock Med. Ctr.*, 937 F. Supp. 2d 5, 11 (D.D.C. 2013)).

## IV.    DISCUSSION

### A.    Insufficient Service of Process

The United States avers in a footnote of its motion to dismiss that Mr. Holley never properly effected service, but it did not affirmatively raise that as a basis for dismissal due to the procedural posture of the case.  ECF No. 12-1, at 1 n.1.  Specifically, Mr. Holley sought and was granted *in forma pauperis* status in the Superior Court, *see* Appl. to Proceed Without Prepayment of Costs, *Holley*, 2024 CAB 002245 (D.C. Super. Ct. Apr. 11, 2024), which thereby required the Clerk of Court for the Superior Court to attempt service on Mr. Holley's behalf, *see* D.C. Super. Ct. R. Civ. P. 54-II(i)(1).  It appears from the docket that the Superior Court initiated service, *see* Compl., Summons, and I.O. with Acknowledgment Form Mailed to Defs., *Holley*, 2024 CAB 002245 (D.C. Super. Ct. Apr. 18, 2024), but the process halted after the United States removed the action to this court.

When a case is removed to federal court before service is completed, the plaintiff has ninety days to effect service.  *See* 28 U.S.C. § 1448 (explaining that service in a removed case "may be completed . . . in the same manner as in cases originally filed in [the] district court"); Fed. R. Civ. P. 4(m) (requiring the plaintiff to effect service within ninety days of filing the complaint).  In light of Mr. Holley's *in forma pauperis* status, this court should have instructed its Clerk of Court to attempt service, *see* Fed. R. Civ. P. 4(c)(3), but it failed to do so based on a misreading of the Superior Court docket.  The deadline to effect service was August 22, 2024.  The United States filed its motion to dismiss on August 21, and while it noted that it had not been served yet, it did not move for dismissal on that basis because the deadline had not passed.  *See* ECF No. 12, at 1 n.1 (noting, but not arguing, that Mr. Holley had yet to serve the United States).  After the deadline passed, the United States did not amend its motion to dismiss to raise an argument for dismissal based on lack of service, instead electing to discuss the issue in its reply brief.  ECF No. 19, at 2-3.

It is well established that a party may not raise a new basis for dismissal in its reply brief. *See Hight v. U.S. Dep't of Homeland Sec.*, 533 F. Supp. 3d 21, 30 (D.D.C. 2021); *see also Ramer v. United States*, 620 F. Supp. 2d 90, 101-02 (D.D.C. 2009) (declining to consider a service argument that was raised for the first time in the defendant's reply brief).  If the United States wanted the court to consider insufficient service as a basis for dismissal, it should have amended its motion to dismiss after the service deadline expired.  *See Overseas Partners, Inc. v. PROGEN Musavirlik ve Yonetim Hizmetleri, Ltd. Sikerti*, 15 F. Supp. 2d 47, 50 (D.D.C. 1998) (holding that "Defendants' failure to amend their motion once the defense of insufficient service of process became 'available' . . . constituted a waiver of that defense").  Having failed to do so, the court will treat the issue as waived.  *See* Fed. R. Civ. P. 12(h)(1); *Overseas Partners*, 15 F. Supp. 2d at 50.

### B.     Subject-Matter Jurisdiction

Turning to the preserved arguments for dismissal, the court begins, as it must, with subject-matter jurisdiction.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93-94 (1998); *see Schmidt v. U.S. Capitol Police Bd.*, 826 F. Supp. 2d 59, 64 (D.D.C. 2011) (explaining that when a defendant files a motion to dismiss pursuant to both Rule 12(b)(1) and Rule 12(b)(6), "the court must first examine the Rule 12(b)(1) challenge[]" because a lack of subject-matter jurisdiction renders all other defenses and objections moot).  The United States argues that Mr. Holley's claims are barred by the doctrine of sovereign immunity.  ECF No. 12-1, at 6-7.  Mr. Holley does not present any counterargument on this point.  *See generally* ECF No. 16.  Normally, under Local Civil Rule 7(b), when "a party files an opposition to a motion and therein addresses only some of the movant's arguments, the court may treat the unaddressed arguments as conceded." *Texas v. United States*, 798 F.3d 1108, 1110 (D.C. Cir. 2015) (quoting *Wannall v. Honeywell, Inc.*, 775 F.3d 425, 428 (D.C. Cir. 2014)).  The court warned Mr. Holley that failing to address the United States' arguments

would result in concession.  ECF No. 14.  Nevertheless, "a court must always assure itself of its subject-matter jurisdiction regardless of whether a party has raised a challenge."  *Kaplan v. Cent. Bank of the Islamic Republic of Iran*, 896 F.3d 501, 511 (D.C. Cir. 2018).  Accordingly, the court will address the argument.

As a general matter, "the United States cannot be sued without its consent."  *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1106 (D.C. Cir. 2005).  Congress may waive the United States' sovereign immunity for certain claims, but such waiver "must be unequivocally expressed."  *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (quoting *United States v. King*, 395 U.S. 1, 4 (1969)). Before a plaintiff can sue the United States, he "bears the burden of establishing that sovereign immunity has been abrogated."  *Stone v. Holder*, 859 F. Supp. 2d 48, 51 (D.D.C. 2012).  If he fails to do so, he cannot "establish the jurisdiction necessary to survive a Rule 12(b)(1) motion to dismiss." *Jackson v. Bush*, 448 F. Supp. 2d 198, 200 (D.D.C. 2006).

### 1.    *Federal Tort Claims Act*

The Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 1402, 2401, 2671, *et seq.*, provides "a limited waiver of sovereign immunity that makes the federal government liable . . . for certain torts of federal employees acting within the scope of their employment."  *Johnson v. Veterans Affs. Med. Ctr.*, 133 F. Supp. 3d 10, 14-15 (D.D.C. 2015).  Specifically, Section 1346 confers jurisdiction on the federal courts for "claims against the United States[] for money damages . . . [for] personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment."   "[I]f a suit is 'cognizable' under § 1346(b) of the FTCA, the FTCA . . . is [the] 'exclusive' remedy" for that claim.  *Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 476 (1994); *see, e.g., Johnson*, 133 F. Supp. 3d at 15.  Therefore, to the extent that Mr. Holley alleges a common-law tort, the FTCA

"provides the exclusive remedy." *Frazza v. United States*, 529 F. Supp. 2d 61, 69 (D.D.C. 2008) (citing *Tri-State Hosp. Supply Corp. v. United States*, 341 F.3d 571, 575 (D.C. Cir. 2003)).

In order to sue under the FTCA, however, a plaintiff must first exhaust his administrative remedies by presenting the relevant agency with "(1) a written statement sufficiently describing the injury to enable the agency to begin its own investigation, and (2) a sum-certain damages claim." *GAF Corp. v. United States*, 818 F.2d 901, 919 (D.C. Cir. 1987); 28 U.S.C. § 2675(a). "If a plaintiff fails to properly exhaust his remedies, the [c]ourt lacks jurisdiction over his subsequent tort claims." *Wiggins v. Brennan*, 308 F. Supp. 3d 274, 276 (D.D.C. 2018).

In its motion to dismiss, the United States argues that Mr. Holley did not exhaust his administrative remedies by submitting a claim to the USMS. ECF No. 12-1, at 4-5; *see Wiggins v. Brennan*, 308 F. Supp. 3d 274, 276 (D.D.C. 2018) (explaining that the failure to exhaust administrative remedies "is an affirmative defense" that the defendant must raise); *see also* "Instructions for Submitting an Administrative Tort Claim with the United States Marshals Service," https://perma.cc/63BS-HAZC. In response, Mr. Holley vaguely states that he "sent a written notification of the incident, accompanied by [a] claim for money damages" on November 9, 2023, but he does not explain who he sent the notification to, how it was sent, or whether it was received. ECF No. 16, at 9. In another filing in the case, Mr. Holley includes a notice of claim that he submitted on November 9, 2023 to the Mayor of the District of Columbia under D.C. Code § 12-309. ECF No. 5-1, at 3-4. Such notice is a prerequisite to filing suit against the *District of Columbia*, but it does not constitute an exhaustion of administrative remedies for a claim against the *U.S. Marshals Service*. In the absence of an allegation that Mr. Holley submitted a claim to the USMS, the court cannot conclude that he exhausted his administrative remedies.

The court therefore lacks jurisdiction to entertain his assault claim under the FTCA.[3] *See Davis v. United States*, 944 F. Supp. 2d 36, 39 (D.D.C. 2013) (rejecting the plaintiff's assertion that he had exhausted his administrative remedies because he did not "provide a receipt or other proof of mailing" or otherwise "show[] that the [Bureau of Prisons] actually received the claim").

If Mr. Holley instead intended to bring a constitutional tort claim, it would fare no better. "It is well established that 'the FTCA does not waive sovereign immunity for constitutional torts that may be committed by [the federal government's] employees.'" *Zakiya v. United States*, 267 F. Supp. 2d 47, 56 (D.D.C. 2003) (alteration in original) (quoting *Meyer v. Fed. Bureau of Prisons*, 929 F. Supp. 10, 13 (D.D.C. 1996)); *see Fed. Deposit Ins. Corp.*, 510 U.S at 478 ("[T]he United States simply has not rendered itself liable under § 1346(b) for constitutional tort claims."). The FTCA is therefore not a viable path to relief for Mr. Holley.

### 2. *42 U.S.C. §§ 1981 and 1988*

Mr. Holley's attempt to sue the United States under 42 U.S.C. §§ 1981 and 1988 also fails. *See* ECF No. 16 at 5 ("My claim was civil rights under the Fifth, Fourteenth, and Eighth Amendment[s] Pursuant to 42 U.S.C. § 1981 and § 1988."). Section 1981 enables all individuals "to make and enforce contracts" free from racial discrimination. 42 U.S.C. § 1981. Mr. Holley does not explain the contractual basis of his claim. But even if he had, Section 1981 does not contain an express waiver of sovereign immunity. *See* 42 U.S.C. § 1981; *Mullen v. Bureau of Prisons*, 843 F. Supp. 2d 112, 116 (D.D.C. 2012). Section 1988, meanwhile, merely "governs the jurisdiction and procedure of federal courts with respect to civil rights claims" and "does not create

---

[3] If Mr. Holley can provide the court with proof that he submitted a timely claim to the USMS and that it was received, that would be grounds for reconsideration under Rule 60(b). *See* Fed. R. Civ. P. 60(b) (permitting a court to relieve a party from a final judgment under certain circumstances).

a federal cause of action." *Berman v. Crook*, 293 F. Supp. 3d 48, 54 (D.D.C. 2018) (quoting *McManus v. District of Columbia*, 530 F. Supp. 2d 46, 77 (D.D.C. 2007)).  Neither statute prevents the dismissal of Mr. Holley's claim.

### C.    Failure to State a Claim

While the court lacks jurisdiction to entertain any of Mr. Holley's claims under the FTCA, Section 1981, or Section 1988, he still has a potential path to relief through either 42 U.S.C. 1983 or *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971). Because Section 1983 and *Bivens* claims are brought against government agents in their individual—not official—capacities, "the sovereign's immunity from damages is . . . not a defense."[4] *Simpkins v. D.C. Gov't*, 108 F.3d 366, 369 (D.C. Cir. 1997) (*Bivens* case); *Stoddard v. Wynn*, 68 F. Supp. 3d 104, 108-09 (D.D.C. 2014) (Section 1983 case).

### 1.    42 U.S.C. § 1983

While Mr. Holley does not explicitly reference Section 1983, he cites an Eleventh Circuit case involving a Section 1983 claim.  *See* ECF No. 16, at 7 (citing *Corbitt v. Vickers*, 929 F.3d 1304 (11th Cir. 2019)).  Section 1983 provides a civil cause of action against "[e]very person" who, while acting "under color of [state law]," deprives an individual of their constitutional rights. 42 U.S.C. § 1983; *Settles*, 429 F.3d at 1104.  Liberally construing Mr. Holley's complaint as alleging a Section 1983 claim against the Deputy Marshals, the United States argues that Section 1983 does not apply to the federal government or federal officials.  ECF No. 19, at 4.  That is true as far as it

---

[4] Mr. Holley does not specify whether he intended to sue the Deputy Marshals in their individual or official capacities.  Having already addressed any potential official-capacity claims above, *see supra* Part IV.B, the court elects to address individual-capacity claims out of an abundance of caution, *see Link v. United States*, 539 F. Supp. 2d 360, 361 (D.D.C. 2008) ("It is well established that a court is obligated to liberally construe the claims of *pro se* litigants").

goes, but it does not answer the question whether the Deputy Marshals were exercising federal authority or the District of Columbia's "state" authority during their interactions with Mr. Holley.[5]

As a general rule, the statute "does not apply to federal actors." *Mullen*, 843 F. Supp. 2d at 116. The determinative consideration, however, is whether the defendant was acting under the color of *state* law when he violated the defendant's rights. *See Williams v. United States*, 396 F.3d 412, 413-16 (D.C. Cir. 2005) (acknowledging that a federal official can be sued under Section 1983 if a state "exercise[s] . . . coercive power" through him (second alteration in original) (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001))).[6] Thus, as was the case in *Williams*, the viability of Mr. Holley's Section 1983 claim hinges on the source of the Deputy Marshals' authority when the Deputy Marshals allegedly violated his rights.

Unfortunately for Mr. Holley, the Deputy Marshals at Superior Court "derive[] [their] authority from generally applicable federal law, not District of Columbia law." *Johnson v. Gov't of D.C.*, 584 F. Supp. 2d 83, 93 (D.D.C. 2008), *aff'd*, 734 F.3d 1194 (D.C. Cir. 2013). The USMS is "a bureau within the Department of Justice under the authority and direction of the Attorney General." 28 U.S.C. § 561(a). The President appoints a U.S. Marshal "for each judicial district of the United States *and for the Superior Court of the District of Columbia*," and the U.S. Marshal

---

[5] The District of Columbia is considered a "state," and its officials are considered "state" actors under Section 1983. *See* 42 U.S.C. § 1983 (providing a cause of action against persons who deprive the constitutional rights of others under color of the law of "any State or Territory or the District of Columbia").

[6] As the D.C. Circuit recognized in *Williams*, other courts determine the viability of a Section 1983 claim based on whether a defendant was "cloaked" in state authority, rather than the defendant's identity as a federal or state official. *See Case v. Milewski*, 327 F.3d 564, 567-68 (7th Cir. 2003) (preventing the plaintiff from suing federal police officers under Section 1983 because the defendants were not acting under state authority and had not "conspired or acted in concert with state officials to deprive [the plaintiff] of his civil rights"); *Kletschka v. Driver*, 411 F.2d 436, 448-49 (2d Cir. 1969) (permitting the plaintiff to sue federal officials because they conspired with state officials to violate the plaintiff's federal rights).

and the Deputy Marshals and other personnel serving under him follow the directives of the "Director of the United States Marshal Service"—a federal official operating under federal law. *Id.* §§ 561(b), (c) (emphasis added). Accordingly, even though the USMS plays a role in maintaining the security of the District's local courts, its members are "at all times . . . federal official[s] acting under color of federal law." *Johnson v. Gov't of D.C.*, 734 F.3d 1194, 1200 (D.C. Cir. 2013).[7] Multiple judges of this court have reached the same conclusion. *See Johnson*, 584 F. Supp. 2d at 93; *Brown v. Short*, 729 F. Supp. 2d 125, 133 (D.D.C. 2010) (concluding that a U.S. Marshal Detention Security Officer was acting under color of federal law when conducting a partial strip search at the Superior Court); *Bame v. Dillard*, 647 F. Supp. 2d 43, 50 (D.D.C. 2009) (same), *rev'd on other grounds*, 637 F.3d 380 (D.C. Cir. 2011). Mr. Holley thus cannot state a claim under Section 1983.

### 2.    *Bivens*

In the alternative, Mr. Holley's allegations could be read to assert a *Bivens* claim against the individual Deputy Marshals who allegedly attacked him. In *Bivens*, the Supreme Court "held that an individual injured by a federal agent's alleged violation of the Fourth Amendment may bring an action for damages against the agent." *Fed. Deposit Ins. Corp.*, 510 U.S. at 484. But while Mr. Holley *could have* alleged such a claim, he expressly disavowed any attempt to sue under *Bivens* in his opposition. *See* ECF No. 16, at 5 ("Plaintiff, in a document filed after his complaint, did state case law about *Bivens*, and that was only because the U.S. Marshals[] also

---

[7] In any event, even though Congress "treat[s] . . . D.C. courts as state courts for certain purposes," *Handy v. Shaw, Bransford, Veilleux & Roth*, 325 F.3d 346, 352 (D.C. Cir. 2003), the District's courts are created pursuant to Article I of the United States Constitution and are thus federal courts, D.C. Code § 11-101(2); *Jenkins v. Wash. Convention Ctr.*, 236 F.3d 6, 10 (D.C. Cir. 2001).

assaulted him [like the] six unknown U.S. Marshals, . . . but I never made a claim."). Because he does not purport to bring a *Bivens* claim, the court will not address it.

*        *        *

In sum, to the extent that Mr. Holley attempts to allege a common-law tort under the FTCA, he has not exhausted his claim, and to the extent he wishes to bring constitutional tort claims under the FTCA, Section 1981, or Section 1988, his claims are barred by sovereign immunity. The court will thus dismiss those claims without prejudice for lack of subject-matter jurisdiction. And because Mr. Holley cannot state a claim for relief under Section 1983 and does not state a claim under *Bivens*, the court will dismiss those claims with prejudice.

## V.    CONCLUSION

For the foregoing reasons, the court will grant the United States' motion to dismiss, ECF No. 12. The court will also deny Mr. Holley's request for subpoenas to issue, ECF No. 11, as moot. A contemporaneous Order will issue.

_____
LOREN L. ALIKHAN
United States District Judge

Date:   January 22, 2025

13